## A96A1265. THE STATE v. BANKS.
### (479 SE2d 168)

BIRDSONG, Presiding Judge.

The State of Georgia appeals the grant of Bernard Banks' motion to suppress. In its sole enumeration of error, the State contends that the trial court erred in granting appellee's motion to suppress evidence of the crack pipe seized from appellee. *Held*:

This contention is without merit. We will not reverse the correct ruling of a trial court regardless of the reason therefor. *Krebsbach v. State*, 209 Ga. App. 474 (433 SE2d 649), citing *Ely v. State*, 192 Ga. App. 203 (4) (384 SE2d 268). Further, reversing the trial court's judgment would mean that the mere fact that a black man is standing next to an apartment building with his hand in his pocket at a reasonable hour as in this case standing alone raises sufficient suspicion of criminal activity to authorize a *Terry* stop and sufficient reasonable belief that the man was armed and dangerous to warrant a pat-down for weapons. As we are unwilling to permit that conclusion, we affirm the trial court's grant of appellee's motion to suppress.

On a motion to suppress, the burden of proving the search was lawful is on the State. OCGA § 17-5-30. See *State v. Slaughter*, 252

Ga. 435, 438 (315 SE2d 865). An appellate court reviewing a trial court's order concerning a motion to suppress evidence must construe the evidence most favorably to the upholding of the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (440 SE2d 646), citing *Anderson v. State*, 133 Ga. App. 45, 47 (209 SE2d 665). Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo review. *Vansant v. State*, 264 Ga. 319 (443 SE2d 474). Accordingly, we will conduct a de novo review of the trial court's ruling, construing all evidence in favor of the judgment to suppress the evidence.

The evidence presented at the hearing on the motion consisted solely of testimony from police officers Lewis and Gray. Their testimony indicates that these officers and at least two other officers were checking the area around an apartment building in Columbus, Georgia for drug activities, but they were not responding to specific complaints about ongoing drug activities. Instead, both officers testified that their sergeant told them that because complaints of drug activity in the area had been received, they should check out the area. Consequently, no less than four officers in at least two police cars went to the area. When they arrived, they saw and then approached three black men who were standing on the corner near an apartment complex. Officer Gray asked appellee whether he lived in the apartments and why he was there. Not satisfied with appellee's responses, Gray demanded that appellee take his hand out of his pocket and then patted down appellee. Feeling a hard, pen-sized object in his back pocket, Gray pulled the object out of appellee's pocket and discovered it was a crack pipe with cocaine residue. Neither additional contraband nor weapons were found on appellee's person.

Under our law, there are three levels of police-citizen encounters. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. *State v. Westmoreland*, 204 Ga. App. 312 (418 SE2d 822). This tier provides no Fourth Amendment protection. *In the Interest of S. B.*, 207 Ga. App. 60 (427 SE2d 52). Officer Gray's initial approach of appellee, in which she inquired about his presence at the apartment complex, falls under the first level of a police-citizen encounter as appellee was not detained by Officer Gray.

The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. *Evans v. State*, 216 Ga. App. 21, 23 (453 SE2d 100). In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for sus-

pecting the persons are involved in criminal activity. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889); *Postell v. State*, 264 Ga. 249 (443 SE2d 628). To stop a citizen, the officer must possess more than a subjective, unparticularized suspicion or hunch. *Rogers v. State*, 206 Ga. App. 654, 659 (426 SE2d 209). The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion (id. at 659), and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. Id. at 659, citing *Terry*, supra at 22; see also *Brown v. State*, 188 Ga. App. 184, 186-187 (372 SE2d 514); *Evans v. State*, 183 Ga. App. 436, 438-439 (359 SE2d 174). "An investigatory stop must be justified by some *objective* manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Citation and punctuation omitted; emphasis supplied.) *Brown v. State*, supra.

When Officer Gray began to exercise control over appellee by demanding that he remove his hand from his pocket, the situation elevated to the second tier of a police-citizen encounter because under the attendant circumstances, Officer Gray had escalated the situation from a mere police-citizen encounter to an investigative detention. Thus, beginning with this demand, Gray needed an articulable suspicion that appellee was either currently or would soon be engaged in an unlawful activity to further detain appellee. Officer Gray, however, articulated no particularized and objective basis for suspecting that appellee was involved in criminal activity. At best her reasons raised a subjective, unparticularized suspicion or hunch.

Additionally, although a *Terry* stop and a pat-down for weapons are many times not analyzed separately, even a particularized and objective basis for suspecting that a person is engaged in criminal activity is not sufficient to authorize a pat-down of the suspect for weapons. An officer who has lawfully detained a citizen is authorized to conduct a *Terry* pat-down for weapons only if the officer has a reasonable belief preparatory to an intended pat-down that the suspect is armed and presents a danger to the officer or others. *Terry*, 392 U. S. at 24; *Brown v. State*, 181 Ga. App. 768, 770 (353 SE2d 572). A *Terry* pat-down is authorized when the officer reasonably believes that it is necessary to protect the officer from attack. *Wood v. State*, 224 Ga. 121, 124 (160 SE2d 368); *Dowdy v. State*, 209 Ga. App. 311, 312 (433 SE2d 293). Consequently, even if we were inclined to credit the State's argument that Officer Gray could have reasonably suspected appellee of loitering in violation of OCGA § 16-11-36 (but see *Bell v. State*, 252 Ga. 267, 271 (313 SE2d 678): "The offense of loitering is committed only when the actor engages in conduct 'not usual for law abiding individuals' which creates 'a reasonable alarm or

immediate concern for the safety of persons or property in the vicinity' "), there is nothing in this record from which one could reasonably believe appellee was armed and dangerous.

Although the police officers testified that the men were standing "in the mode of the 'stop and cop' drive-by method of conducting drug sales," it is important to understand just what this means. Both officers testified that this "mode" consists of standing on the side of the street and waiting to make drug sales. Hence, under this definition these three men in Columbus or three judges of this court in Atlanta, if waiting on the side of the street for any purpose, would be standing in the mode of a "stop and cop." Clearly, then, standing on the side of the street, without something more, proves nothing. In this case, there was nothing more; neither officer testified that she or he saw anything suspicious before they approached these men and demanded that they explain their presence there. In particular, there is no testimony that the officers saw any of these men do anything remotely suggesting a drug transaction. The men merely were standing near an apartment building on the side of a public street around 7:00 p.m. on the evening of May 17, 1995.

Moreover, although the police rely upon the fact that the men were in an area in which drugs were frequently sold, there is no evidence this information was known to these men, or that if it was known, that such information, standing alone, has any significance. Unfortunately, the many appellate cases referring to "known drug areas" or "areas where drugs are frequently sold" demonstrate that areas fitting these labels exist in many of the cities and towns of this state. It is equally unfortunate, however, that not all persons found within these areas are involved with drugs. As one of the officers in this case reluctantly admitted, some decent people live in areas that are known to the police for frequent drug activity. Therefore, we do not find that appellee's mere presence in an area known to the police for its drug activity, without more, is sufficient to support a reasonable suspicion that appellee was engaged in or about to engage in criminal activity. Further, we explicitly reject any idea that the race of these three men can be considered evidence that they were engaged in any illegal or suspicious activity.

Therefore, construing the evidence most favorably to the trial court's judgment (*Tate*, supra at 54 (1)), we find that the record displays no information from which Officer Gray reasonably could have suspected appellee of being engaged in an unlawful activity or that he was armed and dangerous. Both State witnesses repeatedly indicated that they observed three black males, including appellee, merely standing outside the apartment building around 7:00 p.m. Officer Gray testified that appellee's conduct convinced her he was involved in an unlawful activity. However, an examination of appel-

lee's conduct reveals only that he was nervous, as anyone approached by police officers might reasonably be, and had his hand in his pocket. A nervous black man standing outside an apartment complex at 7:00 p.m. with his hand in his pocket does not, standing alone, give rise to an articulable suspicion that the man is engaged in an unlawful activity. Accordingly, under these particular facts, the resulting investigative detention of appellee was unreasonable. Compare *State v. Sapp*, 214 Ga. App. 428 (448 SE2d 3). Moreover, the pat-down of appellee was unreasonable and any evidence found during the pat-down was appropriately suppressed by the trial court.

*Judgment affirmed. Blackburn, J., concurs. Beasley, C. J., concurs in judgment only.*

DECIDED DECEMBER 5, 1996.

*J. Gray Conger, District Attorney, Patrick B. Moore, Paul J. Coburn, Assistant District Attorneys*, for appellant.
*Gwyn P. Newsom*, for appellee.