A97A0731. LAMBRIGHT v. THE STATE.
(487 SE2d 59)

BEASLEY, Judge.

Lambright appeals the denial of his motion to suppress evidence and his conviction for possession of cocaine, OCGA § 16-13-30.

" 'When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. (Cit.) The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. (Cits.) Further, since the trial court sits as the

trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them. (Cit.)' " *State v. Burnett*, 220 Ga. App. 133, 134 (469 SE2d 324) (1996).

At the hearing on the motion to suppress, the only witnesses who testified were the arresting officers, Martin and Vincent. They testified that they were conducting a plainclothes patrol as part of a street crime suppression project targeting gang and drug activity in a certain high-crime area. The officers drove to an apartment complex behind a convenience store known for being a "stop and cop" location, as such is described in *Lee v. State*, 181 Ga. App. 570 (1) (353 SE2d 67) (1987). Martin observed Lambright and two other men standing on the corner in front of the store. Alexander approached Lambright, and a "hand-to-hand exchange" occurred. The two men walked toward another apartment complex and seemed to part company. Believing they had just witnessed a drug transaction, the officers radioed for backup units, exited their car, identified themselves as police, and stopped Lambright and Alexander.

Vincent questioned Lambright, whom he described as "very nervous," and repeatedly asked him to remove his hands from his pockets. Lambright would comply but immediately repocket them. His manner and behavior caused Vincent to become alarmed that Lambright might be concealing a weapon, so he conducted a pat-down of the outside of Lambright's clothing. Vincent detected an object in the right front pocket that felt as if it could be a knife. He asked Lambright to identify it, but he did not respond. Vincent reached in the pocket and retrieved a metal spoon with a white residue that later tested positive for cocaine; it was the eventual basis for his conviction.

Lambright challenges the validity first of the stop and then of the search. Upon this depends the admissibility of the cocaine-coated spoon.

1. "According to the United States Supreme Court there are three levels of encounter between an individual and the police. The first involves the mere accosting by an officer usually requesting name and identification. There is no threshold requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint and is not encompassed by the Fourth Amendment. The second is the '*Terry* type' (*Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)) stop involving temporary restraint, a brief 'seizure' which must be supported by articulable suspicion. The third is an actual or de facto arrest which requires probable cause and involves restraint of one's liberty." *Exposito v. State*, 191 Ga. App. 761, 762 (1) (382 SE2d 412) (1989). See also *Holmes v. State*, 222 Ga. App. 642, 643 (476 SE2d 37) (1996).

Lambright's encounter with the police is within the second category where "[w]hat is demanded of the police officer . . . is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing." (Citations and punctuation omitted.) *Foster v. State*, 208 Ga. App. 699 (1) (431 SE2d 400) (1993). Lambright maintains that, distilled to its essence, the basis for the stop was that the officers saw "something" exchanged in an area notorious for criminal activity. This, he argues, falls short of establishing sufficient articulable suspicion to justify the detention.

In determining whether a stop was justified by reasonable suspicion, "the totality of the circumstances — the whole picture — must be taken into account. . . . The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person." *United States v. Cortez*, 449 U. S. 411, 418 (IIA) (101 SC 690, 66 LE2d 621) (1981); *Evans v. State*, 183 Ga. App. 436, 438 (2) (359 SE2d 174) (1987).

Martin's undisputed testimony was that the particular area was known for heavy drug activity, and he had made drug-related arrests in the area himself. The officers were at the convenience store for the very reason that drug activity had been reported at that location. See *State v. Grimes*, 195 Ga. App. 773, 774 (1) (395 SE2d 42) (1990). Martin's suspicions were initially aroused by Alexander, who was standing at a location known for "stop and cop" drug sales.

Lambright argues that courts are hesitant to find that a "high crime" designation is a strong factor in satisfying the standards required for an interrogatory stop, and erroneously cites *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975), for this proposition.[1] To the contrary, a neighborhood's high-crime reputation has repeatedly been regarded among the factors supporting articulable suspicion. See, e.g., *Holmes v. State*, supra at 643; *Pless v. State*, 218 Ga. App. 603 (1), 605 (2) (462 SE2d 472) (1995); *Bozeman v. State*, 196 Ga. App. 743 (1) (397 SE2d 30) (1990).

Martin's suspicions became "articulable" the moment he saw the hand-to-hand exchange. Although Lambright contends the exchange was susceptible to many innocent interpretations, e.g., exchanging

---

[1] Contrary to Lambright's assertion, the decision in *Brignoni-Ponce* suggests that the designation of the Mexican border as a "high crime" area is a decisive factor in determining that border stops are justified. Recognizing the extent of the problem of combating illegal entry of aliens at the border, and the importance of the government's interest, the Court condoned brief stops of merely "suspicious" individuals by border patrols, so long as the stops are reasonably related to the initial justification for the stop. *Brignoni-Ponce*, supra at 879-880 (III).

addresses or phone numbers, or borrowing a quarter or a cigarette, this behavior, coupled with Alexander's standing in the mode of a seller at a known "stop and cop" location, provide the indicia to justify the investigatory detention.

Lambright's reliance on *State v. Banks*, 223 Ga. App. 838 (479 SE2d 168) (1996), is misplaced. In *Banks*, which is physical precedent only, the police offered no justification for stopping the defendant other than the fact that he was standing on the side of the street in a high-crime area in "stop and cop" fashion. Here, the officer's witness of a hand-to-hand exchange is a critical factor, as was recognized in *Sibron v. New York*, 392 U. S. 40 (88 SC 1889, 20 LE2d 917) (1968). In that case, the United States Supreme Court found no articulable suspicion where the police officer "merely saw Sibron talking to a number of known narcotics addicts over a period of eight hours," and it expressly "emphasized that [the officer] was completely ignorant regarding the content of these conversations, and that he saw nothing pass between Sibron and the addicts." Id. at 62 (IV). Accordingly, the officers' personal observations of what appeared to be a drug transaction in this case, along with the other circumstances, provided a sufficient basis for the temporary restraint. *Chaney v. State*, 207 Ga. App. 72 (427 SE2d 63) (1993).

*State v. Fowler*, 215 Ga. App. 524 (451 SE2d 124) (1994), also relied on by Lambright, is equally distinguishable. The police decided to watch three men because they had been seen in the parking lot of a convenience store earlier. The officers observed the men engaged in "back and forth motions" in a car, although their hands were not visible. They stopped the cars and found contraband. There is no indication the area was known for drug transactions. The trial court's suppression of the contraband was affirmed because the only fact suggesting a crime had occurred was the body motions of the car's occupants. The circumstances lacked positive indicators and thus were markedly different from this case.

2. Given Lambright's nervousness, and his preoccupation with accessing what was in his pockets, Officer Vincent was also authorized to conduct a pat-down to determine whether he was armed. "An officer may take appropriate self-protective measures when he lawfully confronts an individual and reasonably believes him to be armed or otherwise dangerous to the officer or others. The usual police response will be to conduct a frisk, patting the individual's clothing in search of a weapon." (Citations and punctuation omitted.) *Chaney*, supra at 72-73. That was the case here.

When Vincent sensed the long, hard object that he reasonably feared could be a knife, and Lambright refused to identify it, he was authorized to remove the object from Lambright's pocket. *Roberts v. State*, 193 Ga. App. 96, 99-100 (386 SE2d 921) (1989). Particularized

facts must justify the intrusion, *Sibron*, supra at 64, and they did so in this instance.

Admission of the spoon and cocaine in evidence was accordingly not error.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED MAY 12, 1997.

Before Judge Jackson.

*Darel C. Mitchell*, for appellant.

*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.

