A97A2273. THOMPSON v. THE STATE.
(495 SE2d 607)

RUFFIN, Judge.

A jury found Kelvin Thompson guilty of possession of marijuana with intent to distribute and possession of a firearm by a convicted felon. Thompson appealed, asserting that the trial court erred in denying his motion to suppress because the arresting officer did not have a reasonable, articulable suspicion for conducting an investigative stop. For reasons which follow, we affirm.

" 'In reviewing a trial court's decision on a motion to suppress[,] . . . our responsibility is to ensure that there was a substantial basis for the decision. In so doing, we may consider all relevant evidence of record, wherever located, including evidence introduced at a suppression hearing and that introduced at trial; we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.' [Cits.]" (Emphasis omitted.) *State v. Brodie*, 216 Ga. App. 198, 199 (1) (c) (453 SE2d 786) (1995).

Viewed in this light, the relevant facts of this case are as follows. The arresting officer was Dale Pope, who during his career as a police officer had made between 200 and 300 drug arrests. On the evening of the stop, Officer Pope was patrolling a known drug area as part of the Athens-Clarke County Police Department's "West Side Initia-

tive." According to Pope, under the West Side Initiative a group of officers was assigned to the area because of shootings and loitering and to deter drug traffic. At approximately 6:42 p.m., Officer Pope noticed Thompson and another individual standing together in the middle of the street. Pope stated that as he pulled closer he saw the individuals attempting to exchange something in "what appeared to be a drug transaction." According to Officer Pope, when the individuals saw his marked police car they "left skiddishly [sic] in different directions," with Thompson walking toward a house on the street corner. Officer Pope asked Thompson where he was headed, and Thompson responded that he was going to his uncle's house on the corner. Pope's suspicions were further aroused because he knew the individual who lived in the house, and when he asked Thompson for his uncle's name, Thompson looked puzzled and could not provide an answer. Under the circumstances, Officer Pope decided that he needed to pat Thompson down for weapons to ensure his safety. As Pope patted down the outside of Thompson's clothing, he felt what appeared to be a handgun in the stomach area. He then reached underneath Thompson's clothing and retrieved a .22 caliber semi-automatic Colt pistol from the waistband of Thompson's pants. Officer Pope arrested Thompson for carrying a concealed weapon, and in a subsequent search another officer found a plastic bag holding six smaller plastic bags containing marijuana.

Thompson asserts that Officer Pope lacked a reasonable, articulable suspicion for the stop because although Pope stated that he saw the individuals attempting to exchange something in "what appeared to be a drug transaction[,]" he also stated that he did not *actually* observe anything change hands. Thompson contends that the exchange was susceptible to many innocent interpretations such as offering a cigarette or exchanging phone numbers. We find, however, that Thompson's behavior, coupled with evidence that he was standing in the middle of the street in a known drug area and the fact that he did not know the name of his uncle whom he was going to visit, were sufficient to provide Officer Pope with a reasonable, articulable suspicion of criminal conduct. See *Lambright v. State*, 226 Ga. App. 424, 426-427 (1) (487 SE2d 59) (1997).

We similarly find that there was sufficient evidence to support Officer Pope's pat-down of Thompson. Under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), " 'a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. (Cit.)' [Cit.]" *Hodges v. State*, 217 Ga. App. 806, 808 (2) (460 SE2d 89) (1995). A " 'policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. . . . The purpose of

this limited search is . . . to allow the officer to pursue his investigation without fear of violence. . . . So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.' [Cit.] The question is whether 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety . . . was in danger.' [Cit.]" Id., citing *Terry*, supra.

In this case, the trial court's finding that the stop and search met the standard in *Terry* was not clearly erroneous. The evidence showed that the area in which Officer Pope stopped Thompson was known for shootings and that Pope was in fact patrolling the area in part because of the shootings. Officer Pope was alone as he attempted to investigate what appeared to be a hand-to-hand drug transaction, and the suspect, Thompson, was acting skittishly. Under these circumstances, the trial court was authorized to find that Officer Pope's limited protective search was authorized. See *Hodges*, supra.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JANUARY 9, 1998.

*Rosemary M. Hathaway*, for appellant.
*Harry N. Gordon, District Attorney, Henry R. Thompson, Assistant District Attorney*, for appellee.