**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 19, 2019**

# In the Court of Appeals of Georgia

A18A1922. THE STATE v. PRESTON.

MILLER, Presiding Judge.

Vanlen Roshaud Preston was charged with numerous drug-related offenses, possession of a firearm during commission of a felony, obstructing a police officer, and loitering after police found drugs, drug-related paraphernalia, and a weapon during a search of his car. The trial court granted Preston's motion to suppress the evidence from the search, and the State now appeals. After a thorough review of the record, we conclude that the trial court erred in granting the motion to suppress because the police officer had reasonable suspicion of criminal activity when he approached Preston. The search of the car was permissible under the automobile exception because the police observed the firearm in plain sight while obtaining

Preston's identification. Accordingly, we reverse the trial court's order suppressing the evidence.

> There are three fundamental principles which must be followed when conducting an appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

(Citations, punctuation, and emphasis omitted.) *Phillips v. State*, 338 Ga. App. 231 (789 SE2d 421) (2016); see also *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015).

So viewed, the evidence showed that a Clayton County police sergeant was at a gas station when he observed Preston make contact with multiple people in a five minute period. The sergeant had been trained to recognize hand-to-hand drug transactions when he was an undercover detective in the narcotics division and had

2

made approximately 200 arrests for hand-to-hand drug transactions. Based on this training, the sergeant believed that Preston had engaged in hand-to-hand drug sales. The sergeant contacted two nearby police officers, relayed what he had observed, and asked them to investigate. The officers drove into the gas station parking lot, and shortly thereafter, Preston got into his car and pulled up to an available gas pump. As Preston exited his car and walked toward the store, one of the officers approached him and requested identification. The officer instructed Preston to sit on the cement near the pump. When Preston gave the officer his name, the officer asked him to produce his identification. As Preston opened the car door to get his identification, and sat in the car, the officer peered inside the car from his position by the driver's side door. From that vantage point, the officer observed a firearm in the car, and he believed that Preston was reaching for the weapon. Preston admitted that he had a gun in the car.

The officer removed Preston from the car, and the two struggled. Eventually, police were able to handcuff Preston. Police then tased him, while he was handcuffed, and searched him. During the search, police found over $1,000 in cash, in multiple

denominations. In the car, police found numerous Xanax and oxycodone pills, powder cocaine, crack cocaine, "Flex,"[1] baggies, and a scale.

The trial court suppressed all the evidence, finding that the police officer who interacted with Preston had observed no criminal conduct and thus had no reasonable suspicion to conduct a second-tier stop. The trial court further concluded that Preston was seized under the Fourth Amendment when he was instructed to sit on the concrete near the pumps and that the officer then conducted an unlawful search, requiring the evidence be suppressed. The State now appeals.

On appeal, the State argues that the trial court erred in concluding that there was no reasonable suspicion because the collective knowledge of the officers provided a reasonable suspicion that drug transactions occurred. The State further contends that the officer detected the odor of marijuana, which gave him probable cause to search the car.[2] We agree that the police conducted a valid search.

---

[1] "Flex" is counterfeit crack cocaine.

[2] There is a conflict in the testimony about whether there was an odor of marijuana eminating from the car. The officer testified that he smelled a strong odor of marijuana coming from the car, but Preston denied that he had smoked marijuana or that there was such an odor in the vehicle. The trial court did not reference this in its factual findings or make explicit credibility determinations. We therefore do not rely on the odor of marijuana as probable cause to search Preston's vehicle.

Under the Fourth Amendment, there are three tiers of police-citizen encounters:

a first-tier encounter involves only voluntary communications between police and citizens without any coercion or detention by law enforcement; a second-tier encounter involves a brief detention of a citizen by police to investigate the possibility that a crime has been or is being committed; and a third-tier encounter is an arrest and must be supported by probable cause.

(Citations omitted.) *Johnson v. State*, 343 Ga. App. 310, 312 n. 4 (807 SE2d 101) (2017).

It is well-established that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions. Rather, an encounter escalates from a first-tier consensual interaction to a second-tier investigatory detention only when the individual is "seized" by the officer, i.e., only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the individual.

(Citations and punctuation marks omitted.) *Dougherty v. State*, 341 Ga. App. 120, 124-125 (799 SE2d 257) (2017). Here, the officer initially approached Preston asking for identification, an interaction that was clearly a first-tier encounter. Id. When the officer instructed Preston to sit on the cement near the gas pump, however, that encounter rose to the level of a second tier. *Walker v. State*, 299 Ga. App. 788, 790

5

(1) (683 SE2d 867) (2009) (encounter became second-tier investigatory detention when suspect sat on pavement at the officer's direction). Therefore, the question is whether the officer had reasonable suspicion to justify a second-tier encounter.

To meet the reasonable suspicion standard for conducting a second-tier investigatory detention, "the police must have, under the totality of the circumstances, a particularized and objective basis for suspecting [that a] person is involved in criminal activity." (Citation and punctuation omitted.) *Walker v. State*, 314 Ga. App. 67, 70 (1) (722 SE2d 887) (2012). "This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination." (Citation and punctuation omitted.) *Gonzalez v. State*, 334 Ga. App. 706, 711 (2) (780 SE2d 383) (2015). "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior" rather than on scientific certainty. *Illinois v. Wardlow*, 528 U. S. 119, 125 (120 SCt 673, 145 LE2d 570) (2000). In reviewing the trial court's findings, we are mindful that, "[a]lthough we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." (Citation omitted.) *Hughes*, supra, 296 Ga. at 750.

6

Here, the collective knowledge of the police gave rise to a reasonable suspicion that Preston was involved in selling drugs. As the trial court acknowledged, an officer trained to recognize hand-to-hand transactions observed Preston engage in likely hand-to-hand transactions, and the officer communicated this information to the officer who stopped Preston. See *Edmond v. State*, 297 Ga. App. 238, 239 (676 SE2d 877) (2009) (collective knowledge can support reasonable suspicion); *State v. Pennyman*, 248 Ga. App. 446 (545 SE2d 365) (2001) ("The 'collective knowledge' rule provides that reasonable suspicion may exist based on the collective knowledge of the police when there is reliable communication between the officer supplying the information and the officer acting on that information instead of the arresting officer's knowledge alone.") (footnote omitted); *Lambright v. State*, 226 Ga. App. 424, 426 (1) (487 SE2d 59) (1997) (officer had reasonable suspicion after observing hand-to-hand transactions in an area known for drug activity). Compare *Thompson v. State*, 230 Ga. App. 131, 132 (495 SE2d 607) (1998) (finding reasonable, articulable suspicion for second-tier stop where officer saw what appeared to be a hand-to-hand drug transaction in a known drug area, and the defendant could not provide the name of the uncle he alleged he was visiting).

Although there was no evidence presented that the area in which Preston was found was known as a high drug crime area, the absence of such evidence does not eliminate the officers' reasonable suspicion. "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U. S. 266, 277 (122 SCt 744, 151 LE2d 740) (2002); see also *District of Columbia v. Wesby*, 583 U. S. ___ (III) (B) (138 SCt 577, 588-589 (III) (B), 199 LE2d 453) (2018) (trial court can consider innocent behavior as part of the totality of the circumstances in reasonable suspicion analysis). Thus, the officers were entitled to consider, and draw reasonable inferences from, the facts that Preston had parked his car near the building outside the gas station, met with several people in a five-minute period while standing outside his car, and returned to his car and pulled up to a gas pump after the officers pulled into the gas station lot. Making reasonable inferences from this behavior, coupled with the observation of suspected hand-to-hand drug transactions, the officers had reasonable suspicion of criminal activity and the interaction was a permissible second-tier encounter that permitted the officers to detain Preston. See *Lambright*, supra, 226 Ga, App. at 426 (1).

During these permissible first and second-tier encounters, the officer observed the gun in plain view. When Preston returned to his car and reached for his

8

identification, he turned his back toward the officer, and the officer wanted to see what Preston was doing. The officer was able to see the firearm from his position by the driver's side door.

> The plain view exception applies when the police officer had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. In Georgia, "this principle extends to the observation of evidence in plain view inside automobiles when the officer was lawfully at the place where he observed the incriminating evidence. The viewing need not be motivated by any articulable suspicion. On the contrary, law enforcement officers simply have the right to look into automobiles, so long as they have a legitimate reason and are looking from a place in which they have a right to be (e.g., a street or roadside). Any incriminating evidence they have the fortune to see in plain view may be seized and later admitted as evidence.

(Footnotes omitted.) *Crosby v. State*, 266 Ga. App. 856, 858 (598 SE2d 507) (2004).

Here, when the officer was standing by the driver's side door of Preston vehicle in the gas station lot, he was looking from a lawful vantage point. And he had a legitimate reason to be there as he was seeking Preston's identification while following up on Preston's possible drug activity. Moreover, he had a legitimate reason to look in the car when Preston turned his back toward the officer while seated

9

in the car. See *Gaston v. State*, 257 Ga. App. 480, 483 (2) (571 SE2d 477) (2002). As a result, the officer observed the firearm in plain view.

Finally, once police observed the gun in the car, they had probable cause to search the vehicle. "Under the automobile exception to the warrant requirement imposed by the Fourth Amendment, a police officer may search a car without warrant if he has probable cause to believe the car contains contraband, even if there is no exigency preventing the officer from getting a search warrant." (Citations and punctuation omitted.) *State v. Sarden*, 305 Ga. App. 587, 589 (699 SE2d 880) (2010). This is true even if the defendant has been placed under arrest prior to the search. *Horne v. State*, 318 Ga. App. 484, 490 (3) (733 SE2d 487) (2012). "The existence of probable cause is determined by whether, given all the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Citation and punctuation omitted.) *Rivera v. State*, 247 Ga. App. 713, 714 (1) (545 SE2d 105) (2001). In light of the officer's observation of the gun, and the suspected hand-to-hand drug transactions, there was a fair probability that there was contraband in the car. Therefore, there was probable cause to conduct the search. Accordingly, we conclude that the trial court erred in granting the motion to suppress.

*Judgment reversed. Brown and Goss, JJ., concur.*