**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 2, 2020**

# In the Court of Appeals of Georgia

A20A1154. RUNNELLS v. THE STATE.

GOBEIL, Judge.

A jury found Rashawn Eugene Runnells guilty of possession of methamphetamine, possession of marijuana, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Runnells appeals from his judgment of conviction and the denial of his motion for new trial, arguing: (1) the trial court erred in denying Runnells's motion to suppress evidence gathered as the result of an investigative stop by police; (2) the evidence was insufficient to support the verdict for possession of methamphetamine; (3) the trial court erred by re-submitting the methamphetamine charge to the jury after a verdict was rendered; and (4) Runnells received ineffective assistance of counsel. Because

we find that the trial court erred in denying Runnells's motion to suppress, we reverse his convictions without addressing his other claims of error.

Runnells was indicted for trafficking methamphetamine (Count 1); possession of marijuana with intent to distribute (Count 2); possession of a firearm during the commission of a felony (Count 3); and possession of a firearm by a convicted felon (Count 4). His indictment was the result of evidence obtained after Sergeant Kristy Llewellyn with the Gwinnett County Police Department conducted a brief investigatory detention of Runnells in an apartment complex parking lot on March 20, 2018. Llewellyn suspected that Runnells had engaged in a drug transaction after observing him for a short time, so she turned on her marked police car's blue lights and approached Runnells. Upon her approach to his parked vehicle, she smelled marijuana and later saw marijuana debris in the floorboard of the vehicle. A search of the vehicle uncovered methamphetamine, marijuana, a firearm, and other evidence indicating the sale of narcotics.

Before trial, Runnells's trial counsel filed a motion to suppress contesting the admission of the evidence obtained from Sergeant Llewellyn's search of the vehicle. Specifically, Runnells asserted that (1) Llewellyn's investigatory stop of him was unlawful; (2) there was no particularized and objective basis for suspecting that

Runnells was engaged in criminal activity prior to the stop; (3) there was insufficient probable cause to search the trunk of the vehicle without obtaining consent; (4) there was insufficient probable cause to arrest Runnells; and (5) Runnells was compelled to give evidence against himself without being informed that he had a right to refuse cooperation with Sergeant Llewellyn's investigation.

Before the trial began, the trial court conducted a hearing at which Sergeant Llewellyn testified regarding her decisions to approach Runnells's vehicle and later search the vehicle. The trial court ultimately denied the motion to suppress. At trial, the jury found Runnells guilty of lesser-included offenses on Counts 1 and 2, namely, possession of methamphetamine and possession of marijuana. Runnells was also found guilty of Counts 3 and 4 as charged. This appeal followed.

1. On appeal, Runnells challenges the trial court's denial of his motion to suppress. Specifically, Runnells argues that Sergeant Llewellyn had no particularized and objective basis to believe that he was committing any specific crime when she initiated the investigative detention.

At the outset, the State argues that Runnells waived this argument. At the suppression hearing, Runnells's counsel told the trial court that the basis of the motion to suppress was "that there was not probable cause to search the vehicle and

3

there was not any lawful exception to search the vehicle." Thus, the State argues that by focusing only on the probable cause to search the vehicle at the hearing, Runnells waived his challenge to the lawfulness of Sergeant Llewellyn's investigatory stop. We disagree.

"In challenging a trial court's denial of a motion to suppress, a defendant may not argue on appeal grounds that he did not argue (and obtain a ruling on) below." *Massey v. State*, 350 Ga. App. 427, 430 (2) (a) (827 SE2d 921) (2019) (citation and punctuation omitted). Here, although Runnells's counsel chose to focus on the search of the vehicle at the hearing, the written motion to suppress included in two places challenges to the lawfulness of Sergeant Llewellyn's investigatory stop of Runnells, including the specific argument that Llewellyn did not have an objective and particularized suspicion to stop him. Additionally, both parties questioned Llewellyn at the hearing about her initial observations of Runnells and her decision to approach him. Although the trial court did not make specific findings regarding Llewellyn's reasonable suspicion to stop Runnells, it did note that the "circumstances surrounding how Sergeant Llewellyn first came into contact with the vehicle" bolstered the evidence supporting probable cause for the search. Further, the trial court's ruling denied Runnells's motion to suppress in full, and was based on the arguments

4

presented at the hearing "and others." Finally, Runnells again raised the lawfulness of Llewellyn's stop in his amended motion for new trial, pointing to the written motion to suppress as the foundation for his objection, and the trial court denied his motion for new trial on the merits, rather than finding that Runnells had waived the issue in the underlying proceedings.[1]

The State cites no cases to support its assertion that by failing to specifically articulate the lawfulness of the stop during the hearing, Runnells waived this issue for appeal. We find that where (1) Runnells raised the issue specifically in his written motion, (2) the parties questioned Sergeant Llewellyn sufficient to create a record on the issue, (3) the trial court's ruling denied the motion to suppress in full and was based on arguments presented at the hearing "and others," and (4) the trial court did not find a waiver when presented with the issue in the motion for new trial, Runnells properly raised this argument below and received a ruling by the trial court sufficient to allow for appellate review.[2] Compare *Smith v. State*, 205 Ga. App. 848, 848-849

---

[1] After his motion to suppress was denied, Runnells was not required to object again at trial. See *Kilgore v. State*, 247 Ga. 70, 70-71 (274 SE2d 332) (1981).

[2] We do note, however, that the focus of the motion to suppress hearing does necessarily limit the record in this case, as Llewellyn was questioned only briefly about her decision to detain and question Runnells. Our holding on the lawfulness of the stop is therefore limited to the facts as they were developed in the record.

(2) (424 SE2d 60) (1992) (appellant waived issue that was not included in written motion to suppress, but did not waive issues that were "adequately raise[d]" in written motion), *Wingate v. State*, 347 Ga. App. 341, 342 (1) (819 SE2d 502) (2018) (issue not raised in written motion to suppress, but raised in post-hearing brief was properly preserved for appellate review), with *Bryant v. State*, 326 Ga. App. 385, 387 (756 SE2d 621) (2014) (where appellant did not raise an argument "in his motion to suppress *or* at the hearing on the motion," issue was waived on appeal) (emphasis supplied).

We now consider the merits of Runnells's argument on appeal. "In reviewing the grant or denial of a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment." *Adkinson v. State*, 322 Ga. App. 1, 1 (743 SE2d 563) (2013) (citation and punctuation omitted). Here, however, Sergeant Llewellyn was the only witness relevant to the issue before us, and Runnells makes no dispute as to her credibility or the facts to which she testified, nor did the trial court make any credibility determinations or factual findings to resolve any conflicts in the evidence. Thus, "we conduct a de novo review of the trial court's application of law to the undisputed facts." *Hughes v. State*, 269 Ga. 258, 259 (1) (497 SE2d 790) (1998).

6

Sergeant Llewellyn testified at the motion to suppress hearing that she had four years' experience on the narcotics squad of her police department, and had extensive training in drug investigations. On the night of the incident, Llewellyn was conducting a random patrol of an apartment complex in a "very high crime" area known for drug activity and recent robberies. It was dark at the time. She noticed a vehicle parked "oddly" behind several other parked vehicles. There was a Hispanic male standing at the driver's side door, who looked as if he was engaged in "some sort of contact with the driver" of the oddly parked vehicle. When the Hispanic male saw Llewellyn's police car, he ran from the scene.

At that point, Llewellyn suspected that the man had engaged in some kind of drug transaction or sale of stolen property with the driver of the vehicle. However, Llewellyn did not see any actual hand-to-hand transaction or exchange between the two. She moved her police car closer to the parked vehicle and noticed a passenger in the vehicle. The driver, later identified as Runnells, got out of the car and popped its hood, looking at the engine as if something was wrong with the car. The driver went back into the driver's seat, popped the trunk, and got out again and placed a backpack into the trunk. Llewellyn then decided to engage the driver; she "repositioned [her] car so that [she] could approach him." Choosing to bypass a first-

tier stop, she turned on her blue lights, and got out of her police car. As she approached the vehicle, she noticed a strong smell of marijuana coming from the vehicle.

After speaking to Runnells outside of the car, and while speaking to the passenger who was still inside the car, Llewellyn observed small bits of marijuana throughout the floorboard of the car. The passenger told Llewellyn she had just finished smoking marijuana. At that point, Llewellyn decided that she was going to search the vehicle based on her observations of marijuana. During the search, Llewellyn discovered the evidence that led to the charges against Runnells.

In this case, the State concedes that Llewellyn's interaction with Runnells constituted a second-tier investigatory detention, and we agree. By positioning her marked police car near Runnells's vehicle and activating her blue lights before approaching him, Runnells reasonably could have concluded that he was not free to leave before speaking to Llewellyn.[3] Compare *O'Neal v. State*, 273 Ga. App. 688,

---

[3] Indeed, had Llewellyn not activated her police car's blue lights, her approach and questioning of Runnells would have been well within the permissible scope of a first-tier investigation. See *Rogers v. State*, 206 Ga. App. 654, 656-657 (1) (426 SE2d 209) (1992) (police officer not required to have an articulable suspicion before approaching stopped vehicle to speak to occupants, so long as encounter involves no coercion or detention of citizens).

8

689-690 (616 SE2d 479) (2005) (police car pulling up behind stopped vehicle and activating blue lights and sirens before approaching stopped vehicle constituted a second-tier encounter), and *McKinley v. State*, 213 Ga. App. 738, 739 (445 SE2d 828) (1994) (unmarked police car pulling up next to stopped vehicle and activating blue lights before officer directed suspect to get back into his vehicle constituted second-tier encounter), with *McClain v. State*, 226 Ga. App. 714, 716-717 (1) (487 SE2d 471) (1997) (officers pulling up beside stopped vehicle in police car without activating blue lights and approaching suspect to ask questions constituted a mere first-tier interaction and did not require reasonable suspicion).

In a second-tier investigatory detention, "a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." *State v. Banks*, 223 Ga. App. 838, 839-840 (479 SE2d 168) (1996) (physical precedent only), citing *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968). "A reasonable suspicion is more than a subjective, unparticularized suspicion or hunch," and "[t]he officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant

9

that intrusion." *Rogers v. State*, 206 Ga. App. at 659 (3) (citations and punctuation omitted).

Sergeant Llewellyn testified consistently at the suppression hearing and the trial about her basis for stopping Runnells, which consisted of her knowledge that the area was a high crime area, her observation of Runnells's vehicle parked "oddly" in the parking lot, and her observation of the Hispanic male standing at the driver's side door who then ran away from the vehicle after spotting her police car. We acknowledge that these facts provided Llewellyn with a basis to increase her level of suspicion of Runnells. However, whether that level of suspicion was enough to justify a second-tier investigatory detention is a another question, and a close one.

On one hand, our Supreme Court and this Court have held that a police officer witnessing a suspect fitting a pattern of criminal behavior in a high-crime area is not sufficient to provide a reasonable, articulable suspicion to detain the suspect. See *Hughes v. State*, 269 Ga. 258 at 260-261 (1) (second-tier detention unjustified and denial of motion to suppress reversed where suspect was driving in high-crime area, picked up man from street and continued driving slowly throughout neighborhood back to where the passenger was picked up; officer suspected that passenger was buying drugs from suspect based on pattern of behavior in neighborhood); *Holmes*

10

*v. State*, 252 Ga. App. 286, 287-289 (556 SE2d 189) (2001) (second-tier detention unjustified and trial court's denial of motion to suppress reversed where suspect was walking through parking lot known for drug activity, briefly stopped at the window of a parked car, changed his walking direction after noticing the police, and appeared nervous when approached by the police); *Adkinson*, 322 Ga. App. at 2-3 (second-tier detention unjustified and trial court's denial of motion to suppress reversed where suspect was observed at a motel located in an area known for heavy drug activity; suspect parked his vehicle, climbed the motel stairs, disappeared from view for a few minutes, then came back down to his vehicle and drove off); *Williams v. State*, 327 Ga. App. 239, 244 (758 SE2d 141) (2014) (second tier detention unjustified and trial court's denial of motion to suppress reversed where suspect was observed entering briefly and departing an apartment that was being surveilled as the location of suspected drug sales; officers did not have a particularized suspicion that Williams was engaged in wrongdoing at the time of the investigatory stop). In these cases, although some additional observation of the suspects was warranted, the detentions of the suspects were found to be unlawful, and, in all four cases, the orders of the trial court finding otherwise were reversed.

On the other hand, where a suspect was observed directly making a hand-to-hand exchange with another individual, our Court has found sufficient justification to warrant a second-tier detention. See *Lambright v. State*, 226 Ga. App. 424, 425-427 (1) (487 SE2d 59) (1997) (noting that officer's "became "articulable" the moment he saw the hand-to-hand exchange" between suspect and third party). Further, where suspects were observed making what an officer suspected were hand-to-hand drug transactions, combined with some additional suspicious behavior from the suspect, we have found investigatory detentions to be warranted. See *State v. Preston*, 348 Ga. App. 662, 665 (824 SE2d 582) (2019) (second-tier detention was justified and trial court's order suppressing evidence was reversed where suspect was observed making what an experienced officer believed to be multiple hand-to-hand drug transactions with multiple individuals over a five-minute period; suspect also changed his behavior after noticing police by moving his vehicle from where it was parked in front of a gas station's store to a gas pump to begin pumping gas); *Thompson v. State*, 230 Ga. App. 131, 132-133 (495 SE2d 607) (1998) (trial court's denial of motion to suppress affirmed where suspect was observed near another individual, engaged in what an experienced officer suspected to be a drug transaction, and both the suspect and the other individual left "skiddishly" after observing police; officer approached

12

suspect in a first-tier encounter, where suspect gave suspicious answers to officer's questions before officer escalated the encounter to second-tier detention; this Court specifically listed suspect's suspicious behavior during first-tier encounter as part of the basis for officer's reasonable, articulable suspicion).

We conclude that the facts in Runnells's case lie somewhere between the *Hughes*/*Adkinson* line of cases and the *Lambright*/*Preston* line of cases. Although Sergeant Llewellyn testified plainly that she did not observe any hand-to-hand exchange between Runnells and the Hispanic male who later fled the scene, she witnessed them engaged in some way, and she did suspect that some kind of transaction had occurred. However, the record reflects that Llewellyn witnessed only "some sort of contact" between the two men, and she did not specify whether she observed any physical contact between them, versus observing mere communication. Additionally, when pressed, Llewellyn could not specifically articulate her suspicion about what she observed, explaining that she "figured there was some sort" of crime taking place, either "an illegal drug transaction" or "possibly stolen property being sold."[4]

---

[4] Llewellyn further equivocated about what type of criminal activity she suspected had occurred, stating, "we have a lot of different crimes that could have been occurring."

13

Based on the totality of the circumstances, we conclude that Sergeant Llewellyn's level of suspicion was more akin to the "pattern of behavior" level of suspicion criticized in *Hughes* and *Adkinson* than the more specific and articulable suspicion found in *Lambright* or *Preston*. As in *Adkinson*, Llewellyn inferred that Runnells "fit a pattern of behavior" by being oddly parked in a high-crime area and having a third party standing at his driver-side window who had some fear of the police. 322 Ga. App. at 3. "In other words, the stop was not based upon a particularized suspicion; rather, it was based upon [Runnells's] conformity to a general pattern of behavior." Id. Accordingly, we conclude that, "[a]lthough [Runnells's] behavior might have justified closer observation, the officer lacked sufficient information to believe that [Runnells], in particular, was engaged in illegal activity so as to provide a reasonable, articulable suspicion to justify the stop." Id.

Significant to our conclusion is also that Llewellyn made no allegation that she saw Runnells commit a traffic violation or any other crime while observing him, she was not patrolling the apartment complex as a part of any specific ongoing drug investigation, and she was not looking for anyone matching Runnells's or his passenger's description. See *Adkinson*, 322 Ga. App. at 3 (listing facts that could potentially have provided officer with reasonable articulable suspicion). Further,

14

although the Hispanic male seen interacting with Runnells at the vehicle ran when he saw Llewellyn's police car, Runnells himself "did not . . . attempt to avoid police detection or act in any erratic manner." Id.; *Hughes*, 269 Ga. at 260 (1) (noting that suspicious behavior by suspect after observing police could be significant in determining reasonable articulable suspicion).[5] Thus, additional indicia of criminal behavior that could have contributed to Llewellyn's level of suspicion were not present in this case.

For all of the reasons stated above, and based on a totality of the circumstances, we conclude that Sergeant Llewellyn did not have sufficient justification for her investigatory detention of Runnells. While Llewellyn's suspicions turned out to be warranted, when we look, as we must, at the basis of her suspicions prior to the

---

[5] Llewellyn testified that, after the Hispanic male fled and she repositioned her police car, she witnessed Runnells get out of the vehicle, look under the vehicle's hood, and retrieve something from inside the vehicle and place it in trunk. However, she did not testify that she found this behavior suspicious or that it contributed to her decision to approach Runnells's vehicle. As noted above, this is one example of how the focus of the motion to suppress hearing may have limited the record in this case. Had Llewellyn been pressed more extensively on her reasons for detaining Runnells, it is possible that she would have articulated additional reasons. However, we are limited to the testimony as it was provided by Llewellyn. See *Jorgensen v. State*, 207 Ga. App. 545, 545-547 (428 SE2d 440) (1993) (considering the reasons articulated by the officer to form basis for investigatory stop when reviewing denial of motion to suppress)

15

initiation of the detention, we find it insufficient to meet the "particularized and objective" basis required. *Rogers v. State*, 206 Ga. App. at 659 (3) (that an officer's hunch that is later proved correct "is not sufficient to justify, ex post facto, a seizure that was not objectively reasonable at its inception") (citation and punctuation omitted). Accordingly, the trial court erred in denying Runnells's motion to suppress the results of such detention and subsequent search, and we must reverse his convictions on this basis.

2. Our holding in Division 1 renders it unnecessary to address Runnells's remaining enumerations of error.

*Judgment reversed. Barnes, P. J., and Pipkin, J., concur*.