**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 9, 2012**

# In the Court of Appeals of Georgia

A12A1473. LOPEZ-JIMINEZ v. THE STATE.

BOGGS, Judge.

After a jury trial, Jose Rafael Lopez-Jimenez was convicted of the offense of trafficking in methamphetamine. His amended motion for new trial was denied, and he appeals, asserting the general grounds and ineffective assistance of counsel. Finding no error, we affirm.

1. Construed to support the jury's verdict, the evidence shows that a police officer with the Atlanta DEA task force had a house in Duluth, Georgia under surveillance after receiving reports that it was an "active stash house[]." While he was observing and photographing the house, Lopez "came out the front door and approached" him, and wanted to know what he was doing. There was a "for sale" sign

in the yard,[1] and the officer asked Lopez "if the home was in fact for sale." Lopez responded that it was, but when the officer asked to see the inside Lopez refused, saying that he needed to contact the real estate agent or the homeowner.

Three days later, the officer obtained a "knock and announce" search warrant on the house, and a drug task force team executed the warrant. After knocking at the front door and announcing that they were police and had a search warrant in both English and Spanish, the team received no response and forced open the front door. Lopez and another individual, Urena,[2] were sitting on a sofa in the living room immediately inside the front door. Several officers testified that they noticed a strong smell of methamphetamine in the room.

A large plastic tub was on the coffee table in front of the sofa, along with several large plastic trash bags containing what the officer testified were wrapping or outer packaging for narcotics. An officer testified that methamphetamine is generally repackaged once it arrives at its destination, in this case into gallon-sized

[1] The sign was a generic pre-printed "for sale by owner" sign with handwritten telephone numbers on it. The officer doing the surveillance testified that a "drug stash house" often has a "for sale" or "for rent" sign on the property "to allay suspicions by law enforcement."

[2] Urena was also charged with trafficking and pleaded guilty before Lopez's trial.

plastic bags. Field testing of the packaging materials was positive for methamphetamine. Two pairs of latex gloves were sitting on the coffee table. An officer testified that handling methamphetamine without gloves produces a characteristic peeling of the skin and calluses, and that he observed such skin damage on Lopez's hands.

The police recovered approximately 62 kilograms (136 pounds) of methamphetamine from the house. In the closet of the master bedroom, which was occupied by Urena, officers found a laundry basket and two cardboard boxes containing a digital scale and numerous gallon-sized plastic bags of methamphetamine. In a closet in one of the two other bedrooms, officers found a shoe box containing two one-gallon plastic bags, each containing about a pound of methamphetamine. Clothing was also found in the second bedroom, which Urena testified was occupied by Lopez. The third bedroom was completely empty, without any clothing or items.

Officer found two wire transfer receipts on the kitchen counter, showing that money was wired from Mexico to Lopez at a nonexistent address in Lawrenceville. An officer testified that Lopez stated he was visiting from California and had arrived in Georgia about five days earlier.

3

Urena testified on behalf of the defense that Lopez moved into the house three to five days before the arrest, and that only the two of them were in the house. He testified that Lopez did not deliver the drugs, did not buy or sell them, and did not touch them while they were at the house. But on cross-examination, Urena acknowledged that Lopez was present when the drugs were brought to the house, that Urena told Lopez to help him dispose of the packaging, and that "[Lopez] was there with me doing it." He also testified, however, that they had not yet begun and "were going to do it together," and that "I was the one throwing it out."

This evidence, though circumstantial, was sufficient to authorize the jury's verdict.

> Under OCGA § 24-4-6, upon which the jury was instructed, to warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, although circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed on appeal unless the verdict of guilty is insupportable as a matter of law.

4

(Citations, punctuation, and footnote omitted.) *Simmons v. State*, 299 Ga. App. 21, 23 (1) (a) (681 SE2d 712) (2009).

Lopez argues that the evidence shows only spatial proximity to the contraband. We disagree. It is true that constructive possession must be shown by "some connection between the defendant and the contraband other than mere spatial proximity." (Citations and punctuation omitted.) *Brown v. State*, 314 Ga. App. 212, 213 (2) (723 SE2d 504) (2012).[3] Here, the State produced evidence that Lopez was residing at the house, that he approached an individual in the front yard and asked what he was doing, that he refused to show him the home even though it was for sale, that he occupied a bedroom in which methamphetamine was found, and that he was present when the drugs were brought to the house. The evidence further showed that the occupants did not respond to the police "knock and announce." When police entered, Lopez was sitting with Urena on a nearby sofa amid a strong odor of methamphetamine, surrounded with plastic garbage bags full of narcotics packing material, which Urena testified Lopez was helping him remove. This circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of guilt and was sufficient for the jury to find Lopez guilty beyond a reasonable doubt of

---

[3]The jury was charged on sole, joint, actual, and constructive possession.

5

trafficking in methamphetamine. OCGA § 16-13-31 (e); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Taylor v. State*, 285 Ga. App. 697, 698-699 (1) (647 SE2d 381) (2007).

2. Lopez also asserts ineffective assistance of counsel in failing to object to the prosecutor's closing argument and in failing to file a motion to suppress. In ruling on a claim of ineffective assistance,

> [u]nder the two-part test established in *Strickland v.Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984), [Lopez] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If an appellant fails to meet his burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong.

(Citations and punctuation omitted.) *Harrison v. State*, 313 Ga. App. 861, 865 (3) (722 SE2d 774) (2012).

> Making that showing requires that [Lopez] rebut the strong presumption that his lawyer's conduct falls within the wide range of reasonable professional assistance. As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous.

6

(Citations, punctuation, and footnotes omitted.) *Lott v. State*, 303 Ga. App. 775, 783-784 (3) (694 SE2d 698) (2010).

(a) During closing argument, the prosecutor misstated Urena's testimony, claiming that the two men unpackaged the drugs together.[4] Trial counsel did not object to the State's closing argument, but did address the statement in his own closing argument shortly afterwards: "Now, I heard [the prosecutor] say that he helped unpack this stuff. I have to take issue with it. . . . I did not hear anyone say that the Defendant actually unpacked packages of methamphetamine from that bag. If I'm wrong, I'm sorry, but I don't remember hearing it."

At the hearing on the motion for new trial, Lopez's trial counsel explained that he did not object because he was not sure that the prosecutor's statement was in error until he had checked with co-counsel and the Spanish interpreter. He stated, "I've always believed that if you don't have a really solid reason to object . . . it looks bad for your client if you object, if you interrupt the other attorney in closing" and added that "my strategy was I didn't want to - - I feel that it will always hurt you with a jury if you don't have a rock solid objection when you . . . object during a closing or an

---

[4]Appellate counsel believed that the misstatement was not deliberate and that the prosecutor had "misheard" the testimony. The prosecutor acknowledged, "I got it wrong."

7

opening argument." "Trial tactics, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel to have been ineffective so as to overturn a conviction. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." (Citations and punctuation omitted.) *Brantley v. State*, 271 Ga. App. 733, 737 (1) (611 SE2d 71) (2005).

Trial counsel's decision not to object, but instead to comment on the misrepresented statement when given the next opportunity, was not patently unreasonable.

> To the extent that trial counsel made a reasonable strategic decision not to object to the closing argument, such did not constitute ineffective assistance of counsel. Moreover, the trial court instructed the jury that the arguments of counsel were not evidence and thus, could not establish any fact. In light thereof, [Lopez] cannot show there is a reasonable probability that the outcome of the trial would have been different if counsel had argued differently to the jury.

(Citations and punctuation omitted.) *Damerow v. State*, 310 Ga. App. 530, 538-539 (4) (b) (714 SE2d 82) (2011).

(b) Lopez also contends that trial counsel was ineffective for failing to file a motion to suppress the methamphetamine and related evidence the police seized from

the residence. He contends the affidavit supporting the search warrant was insufficient because it did not set forth enough details concerning the "confidential informant's basis of knowledge to establish probable cause." But trial counsel testified that the affidavit was "detailed," and that the affiant laid out his qualifications as well as the qualifications and reliability of the confidential informant, and that the affiant gave facts corroborating the informant's information. Counsel stated that "there were no legal insufficiencies to justify bringing a motion to quash the subpoena – I mean the search warrant."

"The decision of whether to file a motion to suppress is a matter of professional judgment, and we will not judge counsel's trial strategy in hindsight." (Citations and punctuation omitted*.) Patterson v. State*, 259 Ga. App. 630, 634 (4) (577 SE2d 850) (2003). Moreover, we agree with trial counsel and the trial court that the affidavit in support of the search warrant was not insufficient, as it recited facts supporting the informant's reliability, specific information furnished by the informant, and the affiant's investigation which corroborated the informant. "It is not ineffective assistance of counsel to refrain from making a futile motion or filing a meritless motion to suppress." (Citations, punctuation, and footnote omitted.) *King v. State*, 287

Ga. App. 375, 377 (2) (a) (651 SE2d 496) (2007). The allegation of ineffective assistance of counsel therefore is without merit.

*Judgment affirmed. Doyle, P. J. and Andrews, J., concur.*