**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 13, 2014**

# In the Court of Appeals of Georgia

A14A1113. THE STATE v. SHELTON.

MILLER, Judge.

Following a jury trial, Fredrick Leon Shelton Sr. was convicted of possession of cocaine (OCGA § 16-13-30 (a)), two counts of obstructing an officer (OCGA § 16-10-24 (a)), and a sound violation (OCGA § 40-6-14 (a)). The trial court granted Shelton's motion for new trial, finding that trial counsel was ineffective for failing to file a motion to suppress, properly investigate the case, interview and call witnesses on Shelton's behalf at trial, and object to the admission of evidence. The State appeals, contending that the trial court erred in finding that trial counsel was ineffective. For the reasons that follow, we reverse.

The first grant of a new trial on the general grounds will ordinarily not be disturbed by the appellate court absent an abuse of discretion in that the evidence demanded the verdict rendered. However,

the first grant of a new trial on special grounds involving a question of law is reviewable in a proper appeal. We review such a question of law de novo and reverse if the trial court committed legal error.

(Citations and punctuation omitted.) *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009). In this case, the motion for new trial was granted on special grounds namely that trial counsel's deficiencies were so serious that they deprived Shelton of his Sixth Amendment right to effective assistance of counsel. The determination of whether Shelton received effective assistance of counsel, however, involves a mixed question of law and fact, which requires this Court to employ two different standards of review. Accordingly, we review de novo the trial court's decision as to any questions of law, while applying the clearly erroneous standard of review to the trial court's factual findings and credibility determinations. *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000); *State v. Wakefield*, 324 Ga. App. 587, 587-588 (751 SE2d 199) (2013).

So viewed, the record shows that on March 16, 2012, around 7:00 p.m., Corporal Manning of the Camilla Police Department was sitting in his patrol car with the windows down at the intersection of North Butler and Marietta Street in Camilla, Georgia. Corporal Manning heard loud music coming from Shelton's blue Chevrolet

Impala from at least 100 feet away. Corporal Manning noticed that the music got louder as the Impala approached the intersection.

Corporal Manning stopped the Impala based on the loud noise, and advised Shelton of the reason for the stop. Upon receiving Shelton's license and registration, Corporal Manning returned to his patrol car to conduct a status check on those items. Around the time that Corporal Manning finished running Shelton's driver's license and registration, Lieutenant Davis arrived to assist with the traffic stop. Corporal Manning then checked the tint on the Impala's dark windows. Corporal Manning determined that the windows were in compliance with Georgia law, noticed that Shelton's hands were a little shaky and then asked Shelton if he had any marijuana, crack cocaine or large sums of cash inside the vehicle. Shelton responded by pulling out his wallet and stating, "this is all I have."

Corporal Manning then asked Shelton for consent to search the vehicle, and Shelton verbally consented. Corporal Manning asked Shelton to exit and place his hands on the vehicle. Another backup officer, Captain Adkins, arrived just as Shelton was exiting the vehicle. Corporal Manning, who was standing behind Shelton, conducted a weapons pat-down of Shelton and felt a bulge in his right pocket. Corporal Manning asked Shelton what he had in his pocket and Shelton responded

3

by taking his hand off of the car and trying to reach into his pocket. When Lieutenant Davis grabbed Shelton's wrist and put Shelton's hand back on top of the car, Shelton tried to snatch his hand away and reach for his pocket.

Corporal Manning brought Shelton's hand back up and tried to secure Shelton's hands to make sure that he was not going for a weapon. Shelton then reached back down and Lieutenant Davis was able to grab one of Shelton's hands. When Lieutenant Davis attempted to handcuff Shelton, he began to fight and physically resist all three officers.

Shelton continued to resist when Lieutenant Davis and Captain Atkins tried to take Shelton to the ground, so Corporal Manning deployed his taser to the center of Shelton's back. Shelton fell to the ground on his stomach, but he continued to struggle with the officers and again tried to reach into his pocket, so Corporal Manning tased him again. Shelton reached back and tried to grab the taser, so Corporal Manning tased Shelton several more times, until Shelton stopped struggling and the officers were able to handcuff him. Corporal Manning then secured Shelton in his patrol car.

Once Shelton was finally restrained, the officers removed a small cloth bag containing air freshener from his pocket. The officers searched Shelton's vehicle

before turning the vehicle over to a towing service. In the vehicle, the officers found a set of digital scales containing a white powdery substance under the driver's seat of the vehicle and an unopened box of sandwich bags in the vehicle's trunk. While searching the vehicle, the officers also found an open pack of rolling papers, a cigar and a ziploc baggie containing a razor blade that had a white powdery substance on it. Following Shelton's arrest, $507 in cash in small denominations was found on his person.

Lieutenant Davis retrieved the set of digital scales from the vehicle, and Corporal Manning placed it in an evidence bag and initialed the bag. Corporal Manning subsequently placed the sealed bag in the evidence locker at the Camilla Police Department.

At trial, Investigator Connell testified as a drug investigations expert. Investigator Connell stated that he retrieved the sealed bag containing the digital scales from the evidence locker and took it to the Moultrie crime lab. Investigator Connell further stated that the baggies, the rolling papers, the razor blade and the digital scales were all items that are used in the sale of drugs. Investigator Connell also opined that the small denominations of cash found on Shelton's person indicated street level drug dealing.

A forensic chemistry expert with the Georgia Bureau of Investigations ("GBI"), Tara Weinreich, also testified at trial. Weinreich stated that she retrieved the sealed bag containing the digital scales, which was delivered to the crime lab. Weinreich testified that the white powder residue found on the digital scales tested positive for cocaine.

At the hearing on his motion for new trial, Shelton called a witness who testified that in January of 2012, a man by the name of Freddie, who was wanted by police for an outstanding warrant, installed a water pump and brake pads on Shelton's vehicle, and the witness stated that he washed and detailed the vehicle after it was repaired. At some point the witness saw Freddie place a set of digital scales under the passenger seat of Shelton's vehicle. Freddie forgot to retrieve the scales when Shelton picked up his vehicle. When Freddie learned that Shelton had been stopped by the police, he was concerned that the police would find the scales.

1. The State contends that the trial court erred in ruling that trial counsel was deficient for failing to file a motion to suppress. We agree.

> To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), a criminal defendant bears the burden of showing that counsel's performance was deficient and that the deficient performance so

6

prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.

(Citations and punctuation omitted.) *Robinson v. State*, 312 Ga. App. 736, 742 (3) (719 SE2d 601) (2011). As set forth above, "[i]n reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this [C]ourt upholds the trial court's factual findings unless they are clearly erroneous; we review the trial court's legal conclusions de novo." (Footnote omitted.) *State v. Wofford*, 321 Ga. App. 249, 256 (1) (739 SE2d 110) (2013).

(a) *Trial counsel was not ineffective for failing to move to suppress the evidence obtained during the search of Shelton's vehicle.*

Here, trial counsel testified at the motion for new trial hearing that, after viewing the videotape of the traffic stop, conducting some research, and speaking with Shelton, she made a strategic decision not to file a motion to suppress. Trial counsel further testified that her primary motivation was trying to get the most reasonable deal for Shelton because he was a recidivist, and filing a motion to suppress would have hampered her strategy in this respect. Trial counsel spoke with the State several times with Shelton's knowledge and, shortly before trial, the State offered a plea deal of probation with five years to serve without recidivist sentencing.

"Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008). Moreover, "the failure to file a motion to suppress does not constitute per se ineffective assistance of counsel." *Stanley v. State*, 283 Ga. 36, 39 (2) (a) (656 SE2d 806) (2008). Rather, Shelton had to make a strong showing that the evidence would have been suppressed had a motion to suppress been filed. *Roberts v. State*, 263 Ga. 807, 809-810 (2) (e) (439 SE2d 911) (1994). This he failed to do.

> The Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search. The Supreme Court of the United States has held repeatedly that mere police questioning does not constitute a seizure. Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his [vehicle]. Unless the detention was prolonged by the questioning, there is no additional seizure within the meaning of the Fourth Amendment.

(Citations and punctuation omitted.) *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006).

The evidence shows that after Corporal Manning stopped Shelton for a sound violation, he checked Shelton's license and registration, checked the window tint on Shelton's vehicle and immediately thereafter asked for consent to search the vehicle. The videotape of the stop shows that Corporal Manning asked for consent to search less than four minutes after the stop began. Corporal Manning did not unreasonably prolong the stop by running a check of Shelton's driver's license and registration. See *Valentine v. State*, 323 Ga. App. 761, 765 (2) (748 SE2d 122) (2013) (reasonable time to conduct traffic stop includes time necessary for officer to check driver's license and registration). Likewise, Corporal Manning did not violate Shelton's Fourth Amendment rights by contemporaneously checking the window tint or asking Shelton whether he had contraband in the vehicle and whether he would consent to a search because Shelton was lawfully detained for the sound violation during this short period of time. See *Salmeron*, supra, 280 Ga. at 736 (1) (no Fourth Amendment violation where driver is questioned and gives consent to search during lawful detention).

Since Shelton has not shown that his Fourth Amendment rights were violated, he cannot establish that a motion to suppress would have been granted if one had been filed. *Roberts*, supra, 263 Ga. at 809 (2) (e). Accordingly, Shelton has not shown

9

that trial counsel was ineffective for failing to file a motion to suppress, and the trial court erred in granting a new trial on this ground.[1]

(b) *Trial counsel was not ineffective for failing to file a motion to suppress with regard to the pat-down search of Shelton's person.*

Pretermitting whether Officer Manning had a reasonable suspicion that Shelton was armed and dangerous to warrant a pat-down search,[2] the very brief pat-down before Shelton began resisting the officers did not unreasonably extend the duration of the traffic stop, and the search yielded no contraband or weapons. Even if the pat-down search was unjustified, it did not taint the subsequent search of Shelton's vehicle because authority to search the vehicle was based on Shelton's valid consent.

---

[1] In so holding, we note that, in granting Shelton's motion for new trial, the trial court found that Officer Manning "classified" the search as an inventory search. Even assuming that the search was actually performed as an inventory search, Shelton cannot show that a motion to suppress would have been successful. Police officers may inventory the contents of a vehicle that has been lawfully impounded, and Shelton does not argue, nor does the evidence show, that the impoundment of his vehicle was unlawful. See *Humphreys v. State*, 287 Ga. 63, 77 (7) (694 SE2d 316) (2010); see also *Grizzle v. State*, 310 Ga. App. 577, 581 (2) (713 SE2d 701) (2011) (inventory search to document contents of impounded vehicle upheld where there was no showing that police acted in bad faith or for investigative purposes).

[2] See *Arizona v. Johnson*, 555 U. S. 323, 326 (129 SCt 781, 172 LEd2d 694) (2009) (in order to proceed with pat-down search during lawful investigatory stop, officer must reasonably suspect that person stopped is armed and dangerous).

Therefore, Shelton cannot show that a motion to suppress based on the brief pat-down search would have succeeded. See *St. Fleur v. State*, 296 Ga. App. 849, 853 (2) (676 SE2d 243) (2009) (brief pat-down search yielded no weapons or contraband, and officer had independent authority to search defendant's vehicle). Accordingly, Shelton has not shown that trial counsel was ineffective in failing to file a motion to suppress on this basis.

2. The State contends that the trial court erred in finding that trial counsel was ineffective for failing to properly investigate the case, talk to witnesses and call witnesses on Shelton's behalf at trial. Again, we agree.

Generally, trial counsel has a duty to make a reasonable investigation. *Horne v. State*, 298 Ga. App. 601, 605 (2) (680 SE2d 616) (2009). Nevertheless, "[t]he decisions on which witnesses to call, . . . and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Punctuation and footnote omitted.) *Wofford*, supra, 321 Ga. App. at 257 (1).

Shelton argued in his new trial motion that trial counsel was deficient for failing to follow up on information that the digital scales were put in his vehicle by someone else while his vehicle was being repaired and detailed prior to the stop. Shelton did not testify at the new trial hearing, and he admittedly failed to give trial

11

counsel the name or location of the place where his vehicle was repaired and detailed, even though trial counsel met with and spoke to Shelton numerous times prior to his trial. Moreover, Shelton specifically informed the trial court during his trial that he did not wish to present any witnesses in his case; there were no witnesses whom he wanted his trial counsel to call on his behalf; and trial counsel had done everything he wanted her to do in connection with trial counsel's representation of him. Under these circumstances, Shelton failed to establish that trial counsel was deficient in investigating or preparing the case. Accordingly, the trial court erred in granting Shelton's motion for new trial on this ground. See *Wofford*, supra, 321 Ga. App. at 258 (1).

3. The State also contends that the trial court erred in finding that trial counsel was deficient for failing to object to the admission of the digital scales with the cocaine residue. We agree.

Here, the State presented the complete chain of custody of the digital scales from the time the officers retrieved the digital scales from Shelton's vehicle and sealed them in an evidence bag at the scene of the stop to the time when the forensic chemist at the crime lab retrieved the sealed bag and tested the white powder residue that she found on the digital scales. Moreover, the forensic chemist identified the set

12

of digital scales at trial as the item of evidence that was submitted to the crime lab for testing, and Shelton presented no evidence that the digital scales were tampered with.

Shelton nevertheless argued in his motion for new trial that the chain of custody was not fully established by the State because no witness testified that he retrieved the digital scales from the crime lab and brought them to trial. Contrary to Shelton's contention, "there is no need to prove chain of custody for non-fungible physical evidence [such as the digital scales] identified by a witness, since these items can be recognized by observation."(Citation and punctuation omitted.) *Anderson v. State*, 295 Ga. App. 594, 595 (672 SE2d 541) (2009). Since any objection to admission of the digital scales would have been futile, trial counsel was not deficient in this regard, and the trial court erred in granting Shelton's motion for new trial on this ground.

In sum, Shelton failed to establish that trial counsel's representation was ineffective or deficient, therefore, Shelton was not entitled to a new trial. Accordingly, the trial court erred in granting the motion for new trial on this ground.

*Judgment reversed. Doyle, P. J., and Dillard, J., concur.*