**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 17, 2019**

# In the Court of Appeals of Georgia

A19A0198. THE STATE v. WALKER.

REESE, Judge.

The State of Georgia appeals from the trial court's grant of the motion for new trial[1] filed by Christopher Walker, who had been convicted of burglary, criminal trespass, and two counts of armed robbery following a jury trial.[2] The court granted a new trial based on its conclusion that Walker received ineffective assistance of counsel due to his counsel's failure to file a particularized motion to suppress. The State contends that Walker's trial counsel made a strategic decision not to file a motion to suppress and that, even if counsel had provided deficient representation,

---

[1] See OCGA § 5-7-1 (a) (8) ("An appeal may be taken by and on behalf of the State of Georgia [f]rom an order, decision, or judgment of a court granting a motion for new trial[.]").

[2] See OCGA §§ 16-7-1 (b); 16-7-21 (a); 16-8-41 (a).

Walker failed to show that he was prejudiced by the failure to file a motion to suppress. For the reasons set forth infra, we reverse the grant of a new trial to Walker.

Viewed in the light most favorable to the trial court's ruling on the ineffective assistance claim,[3] the trial transcript shows the following facts. At about 1:10 p.m. on November 13, 2014, a DeKalb County police officer, D. A. Drummond, was driving down Fairington Parkway on patrol when he saw a green Honda parked in the grassy area along the street, facing the opposite direction. The Honda's trunk was open, and a man, later identified as Walker, was trying to load a large flat-screen television into the trunk. Officer Drummond turned his patrol car around and drove up the street in order to park behind the Honda and check out the situation. Before the officer parked, however, the Honda's driver suddenly sped away with the car's trunk still open,

---

[3] See *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (When reviewing a trial court's ruling on a claim of ineffective assistance of counsel, the appellate court "accept[s] the trial court's factual findings and credibility determinations unless clearly erroneous, but . . . independently appl[ies] the legal principles to the facts.") (citations and punctuation omitted).

leaving Walker behind.[4] In addition to the television Walker was holding, there was a black duffel bag sitting on the grass near Walker.

Officer Drummond parked so that Walker was in front of the patrol car, then approached Walker and asked him why the Honda had sped off.[5] Walker told the officer that he did not know why, nor did he know who was driving the Honda, even though he had been putting the television in its trunk moments before. Officer Drummond also asked Walker about the television and duffel bag. Walker responded that the items belonged to his cousin, that his cousin had asked for his help, and that his cousin had picked him up at his (Walker's) home.

Officer Drummond decided to place Walker in the back seat of his patrol car while he (Drummond) tried to figure out what was going on.[6] Officer Drummond did

---

[4] Officer Drummond was unable to see the driver of the Honda or get the car's tag number, but he called another officer who was in the area and asked him to look out for a green sedan or Honda Accord driving down Fairington Parkway at a high rate of speed. The officer did not locate a vehicle matching that description.

[5] There were no patrol car dash cam or body cam recordings of the encounter between Officer Drummond and Walker, and the police report subsequently filed by Officer Drummond is not in the record.

[6] Contrary to Walker's counsel's arguments during the motion for new trial hearing, there is no evidence in the record to show that Officer Drummond "threw" Walker into the back of the patrol car.

not handcuff Walker before having him sit in the patrol car, nor did he place Walker under arrest. Officer Drummond testified, however, that, every time he had someone sit in his patrol car for any reason, whether or not the person was a crime suspect, he searched them for safety purposes. Therefore, after getting Walker's consent, the officer conducted a pat-down search of Walker before having him sit in the patrol car. During the pat-down, Officer Drummond found a "Halloween mask" in the front pocket of Walker's pants.

Immediately after Officer Drummond placed Walker in the patrol car, another man suddenly walked up and approached the officer. The man identified himself as "Jabari Nibbs," and Nibbs spontaneously told Officer Drummond that he knew Walker and that the television and the PlayStation that was in the duffel bag[7] belonged to him (Nibbs). An officer who was assisting Officer Drummond checked Nibbs's criminal history and learned that there was an outstanding warrant for Nibbs's arrest.

---

[7] At some point during his encounter with Walker, Officer Drummond looked through the duffel bag that was sitting next to Walker when the officer first approached him. The officer observed that there was a PlayStation, some video games, and a DVD player inside the bag. Officer Drummond did not seize the duffel bag or its contents at that time. After Walker was placed under arrest for the armed robbery, however, other officers searched the bag and seized its contents.

Then, as soon as the officers placed Nibbs under arrest pursuant to the warrant, the officers heard a police dispatch alert about an armed robbery that had just occurred at a nearby residence. The residence was approximately 30 feet from where Officer Drummond had parked his patrol car on Fairington Parkway, and there was a path that crossed an area of bushes and trees separating the house from where the patrol car was parked. According to Officer Drummond, the house was visible from his patrol car, and he testified that it would take "5 seconds, if that[ ]" to walk from his patrol car to the residence using the path.

After hearing the armed robbery dispatch alert, Officer Drummond realized that Walker matched the description of one of the armed robbery suspects, and he placed Walker under arrest. According to Officer Drummond, less than ten minutes had passed from the time he initially saw Walker holding the television along Fairington Parkway until he heard the armed robbery dispatch alert.

At trial,[8] one of the victims of the armed robbery testified that at least three men held her and her husband at gunpoint while the men "ransack[ed]" the house. According to the victim, the gunman and a second assailant were upstairs in the

---

[8] Walker's co-defendant, Nibbs, pled guilty on the first day of trial, but did not testify against Walker.

5

house, and she could hear them talking to a third person who was downstairs. Both victims testified that the assailant with the gun wore a mask like the one featured in the movie, "Scream," while the other man who was upstairs wore a gray Halloween-type mask with "big teeth." The assailants stole two flat-screen televisions, two PlayStation 3 consoles, several video games, their cell phones, and other items from the house. After the assailants left the house, the victims drove to a nearby Walmart to use a phone there to call 911.[9] At trial, one of the victims identified the mask found in Walker's pocket as the mask worn by one of the assailants. The other victim identified the items that Walker possessed when Officer Drummond approached him, i.e., the 55-inch flat-screen television, two PlayStation 3 consoles, and numerous video games, as items that had been stolen from their home during the armed robbery. In addition, during the investigation, officers found a second television, a black hoodie, and a "Scream" mask in the wooded area between the victims' residence and Fairington Parkway.

The jury found Walker guilty of burglary, criminal trespass, and two counts of armed robbery, but found him not guilty of false imprisonment and three counts of aggravated assault. Walker filed a motion for new trial based on ineffective assistance

---

[9] The State played a recording of the 911 call for the jury at trial.

of counsel. Following a hearing, the trial court found that Walker's trial counsel was ineffective for failing to file a particularized motion to suppress.[10] The trial court ruled that Walker's detention was illegal because Officer Drummond had failed to articulate at trial the specific reason why he placed Walker in the patrol car. The trial court's order also stated that, if counsel had filed a particularized motion to suppress prior to trial, it "most likely" would have been granted. Based on this conclusion, the trial court granted Walker a new trial, and this appeal followed.

> In evaluating claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[11] which requires a defendant to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption. Particularly relevant to this case, when trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made

---

[10] Notably, the motion for new trial hearing was conducted, and the motion was granted, by a different judge than who had presided over the trial.

[11] 466 U. S. 668, 690 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984).

7

the motion. Lastly, unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed de novo.[12]

With these guiding principles in mind, we turn now to the State's specific claims of error.

1. The State contends that the trial court erred in finding that Walker's trial counsel's failure to file a particularized motion to suppress[13] constituted deficient performance, arguing that trial counsel made a reasonable strategic decision not to file a motion after investigating the facts surrounding the seizure of the evidence.

"An appellate court evaluates counsel's performance from counsel's perspective at the time of trial."[14] "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of

---

[12] *Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018) (punctuation and footnotes omitted).

[13] The record shows that Walker was represented by at least two other defense attorneys from the time of his indictment until July 2015, when his trial counsel was appointed. One of the prior attorneys filed a general motion to suppress as part of an omnibus motion packet in May 2015, but none of the attorneys filed a particularized motion to suppress.

[14] *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

8

counsel."[15] "The decision of whether to file a motion to suppress is a matter of professional judgment, and we will not judge counsel's trial strategy in hindsight."[16] Stated differently, "hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his [or her] own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim."[17] Ultimately, a trial counsel's tactics and strategic decisions "are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them."[18]

---

[15] Id. (citation and punctuation omitted).

[16] *Lopez-Jimenez v. State*, 317 Ga. App. 868, 872 (2) (b) (733 SE2d 42) (2012) (citation and punctuation omitted).

[17] *Dority v. State*, 335 Ga. App. 83, 96 (4) (780 SE2d 129) (2015) (citation and punctuation omitted). See also *Hartsfield v. State*, 294 Ga. 883, 888 (3) (b) (757 SE2d 90) (2014) ("The proper assessment is an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.") (citation and punctuation omitted).

[18] *State v. Shelton*, 329 Ga. App. 582, 586 (1) (a) (765 SE2d 732) (2014). See also *Gilmer v. State*, 339 Ga. App. 593, 596 (2) (a) (794 SE2d 653) (2016) (This Court is "not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct. If a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or different reasons entirely — the actual lawyer cannot be said to have performed in an objectively unreasonable way.") (citation and punctuation omitted); *Dority*, 335 Ga. App. at 96 (4) (To meet his

During the hearing on the motion for new trial in this case, Walker's trial counsel testified that, after reading the police reports, reviewing discovery, speaking with witnesses, consulting with her co-counsel, and speaking with the attorney for Jabari Nibbs (Walker's co-defendant), counsel did not believe that there was a basis for filing a motion to suppress, nor did she believe that she would have prevailed on the motion if she had filed it. Trial counsel testified that, in her opinion, the facts surrounding Officer Drummond's initial encounter with Walker, including the fact that the Honda sped away when the officer approached, were "suspicious enough" to justify a first-tier police-citizen encounter.[19] In addition, counsel believed that at least some of the evidence at issue (i.e., the television, mask, duffel bag, and contents of the bag) was legally seized and would have been admissible at trial,[20] so a motion to suppress would not have been successful. Accordingly, the record shows that

---

burden of overcoming the presumption that counsel's conduct fell within the range of sound trial strategy and reasonable professional judgment, "the defendant must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not, or put another way, that his lawyer made errors so serious that he [or she] was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.") (citation and punctuation omitted).

[19] See Division 2 (a), infra.

[20] See Division 2 (b), infra.

counsel's failure to file a motion to suppress was not the result of negligence or oversight, but resulted from a reasonable conscious decision she made after considering all of the circumstances presented.[21]

Further, as noted in Footnote 13, supra, Walker had been represented by other attorneys prior to trial counsel taking over his case in July 2015, and none of those attorneys had filed a particularized motion to suppress in this case, either. As a result, Walker is unable to show that trial counsel's decision not to file such a motion was so patently unreasonable that no competent attorney would have made the same decision.[22]

2. The State also contends that the suspicious circumstances observed by Officer Drummond upon encountering Walker authorized the officer to briefly detain Walker while he (the officer) tried to gather additional information to explain what was going on and determine whether a crime was being (or had been) committed. The

---

[21] See *Boykins-White v. State*, 305 Ga. App. 827, 832 (5) (a) (701 SE2d 221) (2010).

[22] See *Boykins-White*, 305 Ga. App. at 832 (5) (a) (The fact that the defendant's prior counsel had not filed a motion to suppress supported a finding that his trial counsel's strategic decision not to file a motion was reasonable.); see also *Gilmer*, 339 Ga. App. at 595-596 (2) (a); *Dority*, 335 Ga. App. at 96 (4); *Shelton*, 329 Ga. App. at 585-586 (1) (a).

State argues, therefore, that the evidence at issue (i.e., the television, mask, duffel bag, and contents of the bag) was legally seized and, thus, a particularized motion to suppress would have lacked merit and been futile.

It is axiomatic that the failure to file a motion to suppress does not automatically constitute ineffective assistance of counsel.[23] Rather, the defendant has the burden of making a "strong showing [in the trial court] that the evidence would have been suppressed had a motion to suppress been filed."[24] This is because "[i]t is not ineffective assistance of counsel to refrain from making a futile motion or filing a meritless motion to suppress."[25]

(a) Under the Fourth Amendment of the United States Constitution, there are three tiers of police-citizen encounters:

> [A] first-tier encounter involves only voluntary communications between police and citizens without any coercion or detention by law enforcement; a second-tier encounter involves a brief detention of a

---

[23] See *Shelton*, 329 Ga. App. at 585-586 (1) (a); *Boykins-White*, 305 Ga. App. at 831 (4).

[24] *Shelton*, 329 Ga. App. at 586 (1) (a). Accord *Reid v. State*, 341 Ga. App. 604, 615-616 (7) (b) (802 SE2d 42) (2017).

[25] *Lopez-Jimenez*, 317 Ga. App. at 873 (2) (b) (citation and punctuation omitted). Accord *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003).

citizen by police to investigate the possibility that a crime has been or is being committed; and a third-tier encounter is an arrest and must be supported by probable cause. It is well established that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. Rather, an encounter escalates from a first-tier consensual interaction to a second-tier investigatory detention only when the individual is "seized" by the officer, i.e., only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the individual.[26]

In this case, the undisputed evidence shows that Officer Drummond's initial approach of Walker was a legal, first-tier encounter.[27]

> Even when officers have no basis for suspecting a particular individual [is involved in criminal activity], they may generally ask questions and ask to examine the individual's identification – as long as the police do not convey a message that compliance with their requests is required. A seizure within the context of the Fourth Amendment occurs only when[,]

---

[26] *State v. Preston*, 348 Ga. App. 662, 664-665 (824 SE2d 582) (2019) (citations and punctuation omitted).

[27] See *Preston*, 348 Ga. App. at 665; see also *Quinn v. State*, 268 Ga. 70, 72 (485 SE2d 483) (1997) (An officer was authorized to approach the appellant and his companion to inquire of their conduct and obtain identification. The Court ruled that the Fourth Amendment was not implicated if a reasonable person in the appellant's circumstances would have believed that he was free to leave.).

by means of physical force or a show of authority[,] a reasonable person would have believed that he was not free to leave.[28]

Further, contrary to Walker's argument during the new trial hearing, there is no evidence that, prior to patting down Walker and placing him in the patrol car, Officer Drummond prevented Walker from walking away from the encounter. In fact, Walker specifically testified at trial that he did not walk or run away when the officer approached because he did not think anything was going on "[a]nd why [would he] run from the police if [he was not] doing [a] crime."

When Officer Drummond patted down Walker and had him sit in the patrol car while the officer tried to figure out what was going on, however, their encounter rose to the level of a second tier.[29] "[A]n officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time

---

[28] *Quinn*, 268 Ga. at 72 (citations and punctuation omitted).

[29] See *Preston*, 348 Ga. App. at 664; see also *Walker v. State*, 299 Ga. App. 788, 790 (1) (683 SE2d 867) (2009) (The encounter between an officer and the appellant was a second-tier investigatory detention because, as the appellant was walking away, the officer told the appellant to "hold on . . . come here" and then instructed him to sit on the pavement while the officer asked him questions pursuant to a "field investigation.") (punctuation and footnote omitted).

14

and take additional steps to investigate further[.]"[30] Therefore, the question is whether

Officer Drummond had a reasonable suspicion of criminal activity to justify a second-

tier encounter.

To meet the reasonable suspicion standard for conducting a
second-tier investigatory detention, the police must have, under the
totality of the circumstances, a particularized and objective basis for
suspecting that a person is involved in criminal activity.[31] This
suspicion need not meet the standard of probable cause, but must be

---

[30] *State v. Beasley*, 270 Ga. App. 638, 639-640 (607 SE2d 245) (2004)
(citations and punctuation omitted). See also *State v. Corbett*, 205 Ga. App. 554, 556
(423 SE2d 38) (1992) ("[U]nder *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d
889) [(1968)], . . . a police officer who lacks probable cause may momentarily detain
a suspicious individual in order to determine his identity or to maintain the status quo
while obtaining more information.").

[31] Contrary to Walker's argument in his brief, while an officer who has
conducted a second-tier investigatory detention of a suspect must identify the *specific
suspicious behavior or circumstances* that made the officer decide to detain the
suspect in order to determine if the suspect was involved in criminal behavior, the
officer is not required to identify the *specific crime* in which the suspect might be
involved in order to justify the detention. See *Preston*, 348 Ga. App. at 664. Nor does
the authority upon which Walker relies for this argument impose such a requirement.
See *Barnes v. State*, 228 Ga. App. 44, 46 (491 SE2d 116) (1997) ("An investigatory
stop must be justified by some objective manifestation that the person stopped is, or
is about to be, engaged in criminal activity." Thus, the officers' testimony that the
suspect looked "suspicious" or "acted suspiciously," that the suspect looked like he
was about to run from the officers, or that the suspect was standing in an area known
for drug activity was insufficiently specific to justify a *Terry* stop.) (citations and
punctuation omitted).

more than mere caprice or a hunch or an inclination. The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior rather than on scientific certainty.[32]

Significantly, however, "[a] determination that reasonable suspicion exists need not rule out the possibility of innocent conduct."[33]

Here, the undisputed evidence (including Walker's own trial testimony) showed that, when Officer Drummond initially observed Walker, Walker was attempting to load a large, flat-screen television into the trunk of a Honda that was parked partially in the grass on the side of a street, where the only houses in the immediate vicinity were located on the other side of a wooded area. When the officer turned around and pulled up behind the Honda, the driver sped off, leaving Walker standing there with the television and duffel bag. Walker told Officer Drummond that the television and duffel bag belonged to his cousin and that he was helping his cousin move. When the officer asked Walker who was driving the Honda, however, Walker claimed that he did not know. We conclude that these circumstances were sufficient to create a reasonable suspicion that Walker may have been involved in

---

[32] *Preston*, 348 Ga. App. at 664 (citations and punctuation omitted).

[33] Id. at 665 (citations and punctuation omitted).

criminal conduct, so that Officer Drummond was authorized to briefly detain Walker while investigating the situation further.[34]

Then, after conducting a pat-down search for safety purposes, Officer Drummond placed Walker in the patrol car without handcuffs. Almost immediately thereafter, Nibbs spontaneously walked up to the officer and said that he knew Walker and that the television and the items in the duffel bag belonged to him (Nibbs). This demonstrated that there was some relationship between Nibbs and Walker, and the contradiction between Nibbs's claim to the items, and Walker's statement that the items belonged to his cousin, justified Officer Drummond's further investigation into the situation. Then, when the officer assisting Officer Drummond checked Nibbs's criminal history, the officer found out that Nibbs had an outstanding arrest warrant and placed him under arrest. And, within moments, the officers heard the armed robbery dispatch alert describing suspects who matched Walker's and Nibbs's appearance, so Walker was placed under arrest, also. Significantly, it is

---

[34] See *Preston*, 348 Ga. App. at 664-665; *Beasley*, 270 Ga. App. at 639-640.

undisputed that the pre-arrest investigatory detention of Walker by Officer Drummond lasted less than ten minutes.[35]

Thus, the trial court erred in concluding that Officer Drummond illegally detained Walker in the patrol car for "several minutes" without a valid reason. Instead, under the circumstances presented, Officer Drummond legally conducted a brief investigatory detention of Walker.[36] Consequently, a motion to suppress that was dependent upon a finding of an illegal detention would have lacked merit, so trial counsel cannot be deemed ineffective for having failed to file such a motion.[37]

(b) Given that Officer Drummond's first- and second-tier encounters with Walker were authorized under the circumstances, we also conclude that the television and the duffel bag would have been admissible at trial, because it is undisputed that both items were in plain view at the time Officer Drummond initially approached

---

[35] See *Goodman v. State*, 210 Ga. App. 369, 371 (436 SE2d 85) (1993) ("Where the officer has the reasonable suspicion which will justify detaining a suspect briefly, [this Court has] approved of detention in the back seat of a patrol car for 10 to 15 minutes as being within the duration of the seizure contemplated under *Terry v. Ohio*.") (citation and punctuation omitted); Accord *Green v. State*, 239 Ga. App. 617, 619 (2) (521 SE2d 441) (1999); *Corbett*, 205 Ga. App. at 556 (1992).

[36] See *Preston*, 348 Ga. App. at 665-666; *Beasley*, 270 Ga. App. at 639-640.

[37] See *Rose*, 263 Ga. App. at 264 (1) (b) (The failure to file a meritless or futile motion to suppress does not constitute deficient performance.).

Walker. Thus, their discovery was not the product of a search (legal or otherwise), and the officer was authorized to temporarily seize the items during his brief investigatory detention of Walker.[38]

Moreover, Walker effectively waived any standing to contest the seizure of the television and duffel bag.

> It is well established that the Fourth Amendment right against unreasonable search and seizure is a personal right and may not be asserted vicariously. Accordingly, when the accused disavows ownership of or other legitimate possessory interest in the item searched, he has no legitimate expectation of privacy in that item, and thus a search violates no right.[39]

---

[38] See *Osment v. State*, 256 Ga. App. 591, 592 (569 SE2d 262) (2002) ("A police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point.") (punctuation and footnote omitted); see also *Preston*, 348 Ga. App. at 665 ("The plain view exception applies when the police officer had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. [S]o long as they have a legitimate reason and are looking from a place in which they have a right to be (e.g., a street or roadside)[, any] incriminating evidence they have the fortune to see in plain view may be seized and later admitted as evidence.") (citations and punctuation omitted).

[39] *Scandrett v. State*, 244 Ga. App. 200, 200-201 (534 SE2d 908) (2000) (punctuation and footnotes omitted). See *State v. McCarthy*, 288 Ga. App. 426, 428 (2) (654 SE2d 239) (2007) ("The burden is on the defendant to show that he has standing to contest the alleged violation, i.e., that he has a legitimate expectation of

Here, Walker testified at trial that Nibbs and Nibbs's cousin had given him a ride to the area and had left him standing on the side of the street while they walked through the woods to the house where the armed robbery took place. According to Walker, shortly before Officer Drummond arrived on the scene, Nibbs's cousin ran out of the wooded area, handed Walker the television, mask, and duffel bag, and told Walker not to leave while he (Nibbs's cousin) went to get the car. In contrast to that testimony, Officer Drummond testified that, during his initial encounter with Walker, Walker said that the items belonged to his (Walker's) cousin and that he was helping his cousin move.[40] Thus, regardless which version of the events was true, Walker clearly disavowed any ownership interest in the items and indicated that his actual possession of the items was intended to be brief and temporary. Further, after walking up to Officer Drummond minutes later, Nibbs claimed ownership of the items, and Walker did not dispute Nibbs's claim.

---

privacy. It is the recognized relationship of the person with the property searched that gives rise to the protective device of suppression.") (citation and punctuation omitted).

[40] Walker denied telling the officer that the items belonged to his cousin. Walker also testified that he was not related to either Nibbs or Nibbs's cousin.

Under these circumstances, there was no legal basis to exclude the television and duffel bag at trial, and any motion to suppress them would have been futile.[41] Therefore, the trial court erred in finding that trial counsel's failure to file a motion to suppress those items constituted deficient performance.[42]

(c) The State argues that the trial court erred to the extent it granted Walker a new trial based on a finding that the mask and the contents of the duffel bag were inadmissible because they were found during illegal searches, i.e., Officer Drummond's pat-down search of Walker[43] and the officer's search of the duffel bag.[44]

---

[41] See *Osment*, 256 Ga. App. at 592-593 (While on patrol at a state fair, officers were notified that a middle-aged man, who was wearing jean shorts and carrying a blue bag, was selling drugs. When the officers located the man in a trailer, he was not carrying a bag. Then, when a blue bag was found during a consensual search of the trailer, the defendant denied that the bag belonged to him. Consequently, the defendant had no reasonable expectation of privacy in the bag or its contents, and the trial court properly denied his motion to suppress.); see also *Scandrett*, 244 Ga. App. at 200-201.

[42] See *Rose*, 263 Ga. App. at 264 (1) (b).

[43] We note that the evidence presented at trial showed that Walker consented to the pat-down search. See *Osment*, 256 Ga. App. at 592-593 ("Generally, a search based on voluntary consent eliminates the need for a search warrant or probable cause.") (punctuation and footnote omitted).

[44] See id. (holding that, after the defendant disavowed ownership of a bag, the defendant lacked standing to challenge the subsequent seizure and search of the bag).

21

The State also contends that, even if these searches had been illegal, the mask and contents of the duffel bag would have been subsequently discovered during a legal search incident to Walker's arrest[45] and, thus, would have been admissible at trial. We conclude, however, that it is unnecessary to address whether these items would have been excluded from trial but for Walker's trial counsel's failure to file a particularized motion to suppress, because, as explained in Division 3, infra, Walker has failed to demonstrate that he was prejudiced by the admission of this evidence at trial.[46]

3. The State contends that, even if Walker's trial counsel's performance had been deficient due to her failure to file a particularized motion to suppress, Walker still did not meet his burden, under *Strickland*, of demonstrating that he was prejudiced thereby, i.e., that there was a reasonable probability that the outcome of

---

[45] See *McCarthy*, 288 Ga. App. at 427 (1) ("When a lawful arrest is effected[,] a peace officer may reasonably search the person arrested and the area within the person's immediate presence for four specific purposes: to protect the officer, to prevent escape, to discover the fruits of the crime for which the person has been arrested, and to discover items used to commit the crime. OCGA § 17-5-1 (a) (1)-(4). [However, these] enumerated purposes do not expand the spatial limitations of a search incident to arrest as previously established in OCGA § 17-5-1 (a), i.e., the 'person arrested' and that person's 'immediate presence.'") (citation and punctuation omitted).

[46] See *Duncan*, 346 Ga. App. at 783 (2); *Brown v. State*, 332 Ga. App. 635, 638 (2) (774 SE2d 708) (2015) ("Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim.").

the trial would have been different if the motion had been filed and granted.[47] We agree.

As discussed in Division 2 (b), supra, the television and duffel bag were not subject to exclusion at trial. Further, as explained in Division 2 (a), supra, Officer Drummond legally detained Walker for the brief period prior to the armed robbery dispatch alert and Walker's resulting arrest. Thus, even if the mask and the contents of the duffel bag had been suppressed pursuant to a motion filed by Walker's trial counsel, the remaining admissible evidence of Walker's involvement in the armed robberies at issue was overwhelming.

As shown above, this evidence included, inter alia, Walker's physical proximity to the house where an armed robbery had just occurred; the presence of a path through the wooded area from the house to where Walker had been standing; the fact that Walker was holding the television and attempting to load it into a Honda, whose driver sped away as soon as Officer Drummond approached; Officer Drummond's testimony about his encounter with Walker and Walker's claim that he did not know who was driving the Honda; Nibbs's sudden appearance at the scene, his statement to the officer associating himself with Walker, and his claim of

---

[47] See *Duncan*, 346 Ga. App. at 783 (2).

ownership of the television and other items (which conflicted with Walker's previous statements to the officer); the armed robbery dispatch alert describing suspects who matched the appearance of Walker and Nibbs; and the testimony of one of the victims that the television belonged to him and had just been stolen from him and his wife at gunpoint.

We conclude, therefore, that Walker has failed to meet his burden of showing a reasonable probability that the outcome of the trial would have been different if his counsel had filed a particularized motion to suppress.[48] Consequently, the trial court erred in finding that Walker received ineffective assistance of counsel and in granting Walker a new trial on that basis.

4. Given our decisions in Divisions 1, 2, and 3, supra, the State's remaining claim of error is moot.

*Judgment reversed. Miller, P. J., and Rickman, J., concur.*

---

[48] See *Duncan*, 346 Ga. App. at 783 (2); see also *Reid*, 341 Ga. App. at 618-619 (7) (d) (i), (ii) (Pretermitting whether the defendant's counsel was deficient for not objecting to certain evidence, given the overwhelming evidence of his guilt, the defendant failed to demonstrate that there was a reasonable probability that the outcome of the trial would have been different if the evidence had been excluded.).